Chatman versus Wengert Good morning. Good morning. Louis Reinstein for Appellant Deputy Wengert. If it may please the Court, we are here seeking reversal of the District Court's ruling denying summary judgment and for this Court to find that Deputy Wengert is entitled to qualified immunity on the basis that the force used to arrest Mr. Chatman was not excessive and was de minimis. The question before the Court is whether the testimony of Mr. Chatman regarding how long he was bidden is blatantly contradicted by the objective record evidence and thus so incredible that no reasonable jury could believe it. If no reasonable jury could believe his testimony . . . I've looked at the pictures. I assume you've seen the pictures. Yes, Your Honor. Okay. It's multiple bites. Yes, Your Honor. It's all up and down the leg. Okay? There's nothing conclusive. It looks like that in itself, I could draw inferences that support his 20 minutes. I mean, it's at least 10 different bites all up and down. I mean, it's horrific pictures. Your Honor, we . . . Right? We believe that the pictures show only four or five puncture wounds and based on . . . And scratches beyond . . . And scratches, yes. And scratches. It's like this part of the leg. Okay? And it's very . . . it's bad. Your Honor, it's one part of the thigh and it's not good, but it is a canine bite. But it doesn't refute at all his claim it was 15 minutes. It's consistent with his claim of 15 minutes. Do you see what I'm saying? I hear what you're saying. most favorable to the plain. If you just look at the pictures, the cases . . . I mean, I don't understand it. Thank you, Your Honor. Although the . . . And he's saying . . . and nobody . . . even if they refute it, he says, as soon as the dog bit, I yelled, I surrender, I surrender, I surrender, blah, blah, blah, dah, dah, dah. The testimony by Mr. Chapman . . . They let the dog stay on my leg. The testimony by Mr. Chapman is that he was bitten for 13 minutes, almost killing him, first in the complaint, then in the second amended complaint, 15 to 20 minutes, tearing at his ankle, then viciously attacked 20 minutes on the left hip, knee, and leg. There are no pictures that support the ankle, no pictures that support the knee. There is the picture that is the thigh, which shows four to five puncture wounds. Although the deposition testimony . . . Why isn't it four to five bites? Mr. Chapman describes his leg as being chewed. He said . . . Why don't the pictures, in the light most favorable to the plaintiff, show four to five chewing on his legs? Your Honor, this is when we would say that the court . . . In the light most favorable to the plaintiff, don't the pictures show four to five chewings on the leg? No, Your Honor, it doesn't. And we believe that the district court should have been persuaded by Edwards v. Shanley. . . . shows unambiguously is at least four punctures and scratches surrounding that, correct? Yes, Your Honor. Tell me why the plaintiff's testimony can be discounted here on the theory that it was contrary to the laws of nature. Because if . . . You've got a hard burden to discount the testimony of the plaintiff. You've got to show that it was either blatantly contradicted by the record or that it was contrary to the laws of nature. Yes, Your Honor. And Mr. Chapman's testimony that he was eaten and chewed, the district court should have been persuaded by the Eleventh Circuit 2014 case, Edwards v. Shanley, in which Judge Hull and Judge Marcus sat on that panel. And in that case, the plaintiff testified he was bitten for five to seven minutes while the officer said ten to fifteen seconds. But in that case, the defense expert, Dr. Meslow, and the plaintiff's expert, Dr. Gupta, testified. And Meslow testified that if a canine bit a suspect for even five to seven minutes, the suspect would have had no chance of survival and would be dismembered. Dr. Meslow stated, I've seen a one-minute police dog bite and it was horrific. I saw an individual and that was considerably worse. Dr. Gupta testified that in Edwards v. Shanley, very severe, very extensive, complex wound. Some of the muscles were severely damaged. Edwards' tissues were just basically chewed up by the dog bites. In that case, Edwards was hospitalized for six days and had two surgeries on his leg, including a skin graft. In our case, we need to look to the objective record evidence, which is the pictures taken at the emergency room, and I hear what your comments are regarding the pictures, but if we also look to the emergency room medical records, the ER records indicate Chapman arrived at 1.12 a.m. and discharge was ordered at 1.36 a.m. on the same day. The ER records indicate wound care to dog bite located on left leg was cleaned with normal saline, dressed with non-sterile 4x4s, used Carelix, which is just a gauze bandage, and Neosporin. So we have the objective third-party records from the emergency room. Same day discharge. Could I interrupt you briefly? Yes, Judge George. The position of the case right now is that the district court has said there was sufficient evidence to get to the jury, and this is an interlocutory appeal. Is that correct? Yes, Your Honor. So the way I understand Johnson v. Jones, which is the controlling Supreme Court precedent, but there's some subsequent cases, is that we have to defer to that kind of a finding of the district court unless there's something that is subjective and blatantly contradicts it under Scoff v. Harris. Is that correct, more or less, a statement of the law? More or less, Your Honor, except that in a qualified immunities situation, which this was, which is the basis for the interlocutory appeal, is that Deputy Wenger was acting within his discretionary authority. I'm talking about the law right now. Yes, Your Honor. Based on the position of the case at this point is that in order for you to win this appeal, you've got to show something analogous to a videotape, and you arguably have it in these pictures. I'm not sure I partake of the doubt shown by my colleagues. It looks like that this picture contradicts the idea that he was chewed for 15 minutes. I'm with you on that. I understand that. But I'm wondering about if you didn't have these pictures, they just didn't exist, and we were just talking about intake records and what people said and what people disagreed. A jury could disagree as to that, and if the district judge said there was enough to get to a jury under Johnson v. Jones, we have to accept that because we don't have anything which blatantly contradicts it like these pictures. Are you with me? Yes, Your Honor. Okay. If that's true, I'm not attributing that to you. I'm just saying that's where I'm thinking at this moment. Are you with me? Yes, Your Honor. What about the ankle? There's no pictures of the ankle, and there's testimony that his ankle was chewed. That's exactly right. If we have to have objective evidence which blatantly contradicts what is alleged, where is that with respect to the ankle? The testimony by Deputy Wenger was that the pictures taken in the emergency room were the pictures of all of his injuries. We'd have to accept that as well. Yes, Your Honor. Okay. When we look at it, when we ask the question as to, well, how does the court need to view the objective record evidence when you have plaintiff's testimony of 15 to as much as 55 minutes of biting by a German shepherd? At the low point, it's 15, but he does say up to 55 in a total number of bites. Under the law of the 11th Circuit, it only has to be more than two though, right? That is correct, Your Honor. That's an important point is because at no time is his testimony two minutes. At no time is his testimony even 60 seconds. Like in Edwards v. Shanley, they talked about 60 to 90 seconds. So if we're only looking at plaintiff's testimony. But if you have a witness who says, I was chewed for 15 minutes, a jury could find that he was chewed for two, couldn't it? I mean, can't a jury find that somebody exaggerated but still there was some basis to it? That's the kind of thing a jury could find. And that would be correct, Your Honor. However, at the summary judgment stage, the court said that the court believed that if it was 10 seconds, then that was reasonable. And the court, though, relied on 15 to 55 minutes. So our whole argument, Your Honor, is that if the court is basing its reason for denying qualified immunity and finding excessive force on plaintiff's testimony of being bitten 15 to 55 minutes, there's no case out there that we've located that would suggest that 15 to 55 minutes is reasonable without any dismemberment, without any tendon showing, without any muscles. With four to five puncture wounds, with the bites that you see in those pictures, those pictures don't compare to what we've had in Priester or Crenshaw. But specifically, Edwards v. Shanley, which the district court should have been persuaded by. Because in that case where it talked about that those bites that took Edwards to the hospital for six days and two surgeries and skin graft, that was less than a minute of a bite according to Dr. Meslow. And Dr. Meslow was the only one that quantified it. So in our case, when you look at the ER records, the objective medical records, same day discharge, no surgery, not even any stitches, the medical records combined with the pictures are the objective evidence that Mr. Chapman never disputed. And in the face of the objective evidence, the district court should have concluded that no reasonable jury would believe plaintiff's testimony of 55 minutes of tearing and chewing by a German shepherd or even 15 minutes. There aren't any credibility determinations to be made. This is all about what a reasonable jury would believe. In all of the cases that discuss, whether it's Anderson v. Liberty Lobby, Feliciano v. City of Miami Beach, they all talk about what would a reasonable jury believe. So this is not just opposing viewpoints or dueling accounts. It's unbelievable testimony in the face of the objective evidence. We ask the court to determine what a reasonable jury would believe and to be the gatekeeper. Because no reasonable jury would accept plaintiff's testimony as true in the face of the objective evidence, the district court should not have considered that. And if the district court did not consider the amount of time he was bidden when considering Deputy Wengert's motion for summary judgment, then based on the record evidence, Deputy Wengert should have been afforded qualified immunity. The cases also don't just rely on video evidence, although there are cases that talk about video evidence. We also had Geigy Chemical Court v. Allen, which was the 5th Circuit 1955 case. But in that one, it was a motor vehicle accident where the plaintiff crashed into the back of a 16-wheeler. The court was faced with physical facts and photographs which were contrary to the plaintiff's testimony. In that case, the court held courts are not required to believe testimony which is inherently incredible or which is contrary to laws of nature and of human experience, or which they judicially know to be unbelievable. So in this case, when you look at those pictures, as bad as Judge Holt described them, they don't describe 15 to 55 minutes of biting. And based on other cases- I just wanted to tell you that you dipped into your rebuttal time. If you wanted to do that, that's fine. Very well. I'll save the remaining for rebuttal. All right. Thank you. May it please the court. Michael Sloan of Carleton Fields. Jordan Burt on behalf of the appellee, Reginald Chapman. At its base, this is a case about conflicting eyewitness testimony at summary judgment. There is a lot that's been said about the laws of nature, about what pictures show, about videotapes and all that. But the basic issue here is that the pictures don't answer the question of what happened at the time of the events in question. The situation presented in the Scott case was a videotape showing someone driving and showing them driving in a manner that was much different than the manner that they testified. There is nothing close to that in the present case. We do not have videotape. We do not have an autopsy that shows something to be impossible. We have a picture only of the aftermath of what happened at the time of the events in question. Do you agree that's a picture of your plaintiff's injuries after the events in question? I do agree that it's a picture of the injuries to his thigh. It just comes down to this. Do they or do they not blatantly contradict the possibility that this person was chewed by a German shepherd for 15 minutes?  They do not. This minimal, some people say maximal, looks like some puncture wounds and scratches of a German shepherd for over 10 minutes. It could result in this amount of visible injury. Is that what you're saying? The video in Scott v. Harris could have been somehow misinterpreted by the judges. But they used their common sense and looked at the video and said this didn't happen. Why wouldn't, I'm going to ask it as a question. Why wouldn't a reasonable observer told that somebody was chewed by a dog for 15 minutes and then look at this picture and say that's clearly false? That's my question. I think that people can have questions about what the picture shows. I'm talking about that's clearly false. I don't think that as a logical matter, as a matter of deduction, that you can deduce from that picture anything about the length of the attack. Okay. And I think the reason for that – But we have to accept that statement that you just made in order to rule for you. I'm sorry, I don't understand. Is that correct? The sentence that you just made that nobody could look at that and come to the conclusion that he was not chewed for 15 minutes. I don't – You have to agree with that in order to rule for you, right? I don't think that that's true. I think that all you have to do to rule in favor of Mr. Chapman is to say that it's not impossible, that this is something that should go to a jury. For the jury to make determinations – Could a German shepherd bite and hold for 10 or 15 minutes consistent with these pictures as opposed to bite and chew? Yes, Your Honor, and I'm glad that that came up because – Isn't that the essence of your argument? The essence – that is a very important part of our argument that the bite and hold method that this dog, Diesel, was trained in doesn't necessarily show. This isn't a wolf who's going out to eat who is trying to tear someone to pieces. It's a trained police dog who is sitting there. It's taught to bite and hold the suspect to subdue them. So as a matter of possibility, as a matter of the laws of nature or blatant contradiction, you could have a situation where someone only had one – You would concede, would you not, that if this dog was biting and chewing for 15 to 20 minutes, you couldn't have pictures that look anything like these. So your argument has to be he could have simply been biting and holding for 15 minutes, and that would account for four puncture wounds and scratches. I think that you're right. As a matter of explaining the picture, the argument goes along those lines, that because of the nature of the training of this dog and the manner that they're trained to bite, that there's nothing that you can really draw from the fact that the picture looks the way that it does. A dog could latch onto somebody and immediately let go, and they're going to have one set of teeth marks. The dog could bite someone's thigh and hold it for a minute or two or five, and you're still going to have the same one set of teeth marks. So I don't think that there's anything – Is there any expert testimony from anyone to the effect that a German shepherd like this dog could bite and hold a thigh without chewing on it, and it would yield pictures that look like this, that is to say four punctures and some scratches? There is no expert testimony in the record below because the expert report that was submitted by Deputy Wenger was stricken by the district court, and that was an issue that was not appealed to this court. So basically what we have here is a situation where an expert report was stricken. There is no expert evidence below, and now on appeal, the appellant is trying to tie in facts and expert opinions from other decisions in order to set aside – No, I think his argument is a little more nuanced than that. I think his argument is if, in fact, this dog was biting and chewing for 15 or 20 minutes, you could not conceivably have marks that look anything like this. The nature of the injury would have had to be profoundly greater, and our common sense could yield that conclusion. We don't need an expert to tell us that. I think that my response to that would be that the standard for disregarding sworn testimony at summary judgment is not common sense. Common sense is something that a jury can consider. They can consider their experience. They can consider the credibility of witnesses. It's got to be blatantly contradicted by the record, or it's got to be so powerful that it's contrary to the laws of nature. That's our law on this issue. Yes. And I would submit that this picture and the testimony of Mr. Chapman are neither contrary to the laws of nature or impossible. But – Could I make one thing clear, just to – might help? You're not making an argument that there are wounds that are not in these pictures? Mr. Chapman below, as I'm sure everyone is aware, testified that his ankle was bitten by the police dog. There are no pictures of his ankle. Who took these pictures at the hospital? Deputy Wenger, the appellant, took these pictures at the hospital. So we can fairly accept on this record that what we have in the nature of injuries is what we see in the pictures, as opposed to something else that wasn't photographed on the ankle? I'm not sure that I understand. We can't – you're not arguing that there were more powerful injuries that were evident from the ankle, even though a picture wasn't taken? That's correct. I'm not arguing that. But I think that the important issue to consider here is that while Mr. Chapman testified as he testified about the length of the attack, that's not what's necessary in the Eleventh Circuit to prevail or reach a jury on a claim of excessive force. We don't need five minutes. We don't need ten minutes. The Priester case discusses two minutes as the reasonable length of time, and there is further evidence in the record here that supports the two-minute determination, that supports a determination that the dog attack lasted for two minutes, because we have a hold-the-air call that occurred at 12.31 and 35 seconds. What does hold-the-air mean? Hold-the-air is what Deputy Wengert testified that he does. He calls into his communication device and says hold-the-air when he's about to encounter a suspect so that there are not any – What's that mean? It means that no one should talk on their walkie-talkies. I see. Thank you. So we have a hold-the-air call at 12.31 and 35 seconds. We have a call that Mr. Chapman is in custody at 12.34 and 45 seconds. So that's three minutes and ten seconds. We have Deputy Wengert testifying in his deposition in his own words, not relying on anything else, but that he gave two warnings to Mr. Chapman. He had the hold-the-air call at 12.31. He gave two warnings. After the first warning, he waited 30 seconds. After the second warning, he waited 30 seconds. And then he released diesel onto Mr. Chapman. We then have at 12.34 and 45 seconds the apprehension, placing Mr. Chapman into custody, and calling out over the radio that he's in custody. So even under the set of facts that Deputy Wengert has asserted in his own sworn testimony, we have an unexplained two minutes and ten seconds here. And I think that's an important thing for the court to consider. But I would also like to address something beyond the length of the attack here. We have testimony on two separate occasions in Mr. Chapman's deposition and in his sworn statement to the state attorney that he surrendered, he cried out, help me, help me, please get the dog off me, I'm sorry, I surrender, I won't run, to which Deputy Wengert responded, I bet you won't run next time. I bet you won't run next time. And that is not the proper role of a law enforcement officer. Deputy Wengert is empowered to control the situation and secure the suspect. He's not empowered to punish. That is the role for the courts, and Mr. Chapman is serving his punishment for the events in question that night as we speak. But even if he had said that and the injuries were de minimis, you would lose, wouldn't you? That if the injuries were de minimis. Even if he was gratuitous and sadistic but you didn't sustain any real injuries, you would lose. Well, I think that the issue of whether if it was de minimis, then you are correct, we would lose. Right, so even if he were sadistic and he made that comment, if the dog bit and held for a very, very short period of time, and whatever injuries he sustained were modest scratch marks, you could not sustain qualified immunity. I think that that is incorrect. Based on the Lee v. Ferraro case, which discussed the fact- Tell me why. The Lee v. Ferraro case involved- I remember it well. I know that you do, Your Honor. The issue there that the court addressed was whether an injury could be de minimis. Let's remember what happened in Lee v. Ferraro counsel. A woman was driving a car on Biscayne Boulevard. She came to a stop. The car in front of her didn't move.  Cop pulls her over for honking the horn. By her account, drags her out of the car, cuffs her, and then smashes her head against the trunk of the car on multiple occasions. A little bit different than what you have here. I think the important part of that decision is the following. The court in that case decided the fact that Lee didn't suffer greater injury doesn't alone render the force used de minimis. The court went on to note, objectively unreasonable force does not become reasonable just because fortuity of circumstances presented- But I'm asking the question here. If, and it's a hypothetical because it's not what you have. You don't even have to debate this issue. You could say that might be right, Judge Marcus, but that's not what we have here. But I'm asking you a simple question. If the guy surrendered and the dog bit and the injuries were utterly de minimis anyway, you couldn't sustain your claim? I mean, am I wrong about that? I think that the issue of de minimis does not come down to what the injuries- does not solely come down to what the injuries- So what does de minimis injury mean? A de minimis injury would be something that did not rise to the level of constituting excessive force. It's not something that is based on what somebody looks- solely based on what somebody looks like after. But I think that the- The nature of the injury then is not relevant to the inquiry? I think that it is relevant. I think that it's not dispositive. I think that the issue that the court resolved in Lee v. Ferraro, which involves someone being slammed up against a car, having their head slammed- Head slammed against the trunk repeatedly. Head slammed against the trunk versus- You have head slammed against the trunk versus being attacked by a police dog. I think that if the situation in Lee v. Ferraro wasn't a de minimis injury, then neither is this one. And I do think that anyone who is claiming that an attack by a police dog is de minimis, when we have the pictures that we have in this case, is not someone who's ever been attacked by a police dog before. I understand. So with that, I just- I would like to note that the issues in this case are clear. This is the type of case where we have disputed issues of eyewitness testimony among witnesses and we would submit that this court should affirm the district court and allow this case to go to a jury. Thank you. Thank you. Thank you. In Counselor's comments, Counselor wants us to look at this as conflicting eyewitness testimony and ignore the actual testimony itself. Counselor has stated that you cannot deduce the amount of time from the pictures but then wants to ignore what the pictures show, and specifically in the last conversation regarding the de minimis injuries, then wants to ignore the objective medical records which show that there were no injuries. Could a dog like this bite and hold the plaintiff for an extended period of time, more than 10 seconds, without chewing at the leg? Isn't that possible? Does that defy the laws of nature? For a German shepherd to be- Right. German shepherd, and he may have been wrong. Maybe he was five minutes, not 15. If you're being bit by a German shepherd, you can easily misapprehend the time. But I'm asking a more general question. Could this dog have bit and held the thigh for an extended period, by which I mean something more than 10 seconds, 2 minutes, 4 minutes, 5 minutes, without causing more injury than would be evident from the picture? Is that beyond the law of nature? It is possible that a dog, any dog- Just bite and hold as opposed to bite and chew. It may be possible with a general question. However, in this case, Mr. Chapman specifically testified that he tried to pull the canine off his leg, which caused the canine to release and grab a second location. It's in his sworn statement testimony. So we have a situation, and there are other cases in our circuit, that say that injuries are actually worsened when a suspect tries to push a dog off, and they release and grab again. So if you're seeing multiple puncture wounds, you actually are likely seeing where the dog grabbed and held, the dog was pushed off and grabbed and held again. That's where you see possibly the four or five puncture wounds, because it's two separate holds. And that is the testimony. So you actually have that in addition to plaintiff's testimony as to the length of time. This is not just a simple grab and hold. This was plaintiff also kicking the dog off, which he's conceded and testified to. Counsel wants to ignore, though, that his client's testimony- I'm going to be consistent with his saying. I was yelling surrender from the first bite. I surrender. I'm not running. I surrender. And so this theory you just espoused is very consistent with the plaintiff that it went on for a longer period of time. All the other- That's one interpretation of what you just said. He kicked him off. He came back. He kicked him off. He's yelling surrender. Why is that not one inference from the evidence? It's not, Your Honor, because you're faced with the testimony of 15 minutes to 55 minutes. If you were faced with the testimony of two minutes, which would have been something that you may have heard in Crenshaw or Priester and other cases, that may not have been so unreasonable and so against the laws of nature or so incredible. But because the testimony is 15 minutes to 55 minutes, that's what you're faced with. So even the comments regarding the CAD, the communication that indicates all of the on-air comments and dispatch, that's counsel's argument, which is contrary to plaintiff's own testimony of the 15 to 55 minutes. And you have Crenshaw v. Lister, 556F31283, 11th Circuit 2009 case, which even says that a officer does not need to rely on the announcement of surrender. There's no testimony that Mr. Chapman put his hands up or Mr. Chapman actually did anything that showed that he would surrender. So even if you take his words as true, that he did say that he was wishing to surrender, he was still hiding in a bush and made no obvious indication that he wanted to surrender. And in Crenshaw, the court said, even assuming as we must, that Crenshaw was legitimately attempting to surrender. It was objectively reasonable for Lister to question the sincerity of Crenshaw's attempt to do so and use the canine to apprehend him. In this case, you have a fleeing felon who had committed a battery leo, who had never been searched. We don't know if there's any weapons on him. Search had been ongoing, other officers had been in the area, no attempt to surrender prior to the canine actually going in and apprehending. And as Judge Marcus questioned, common sense does need to be taken into account. So it's not only whether or not you believe that the 15 minutes to 55 is against the laws of nature, but it is incredible. It is against the weight of any other canine case that we have seen that even makes the allegation. And you can say and you must say that a reasonable jury would not believe 15 to 55 minutes. A reasonable jury would not look at the medical record evidence. And a reasonable jury would not look at the pictures and believe that canine diesel was chewing and eating him for 15 to 55 minutes. And for those reasons, we ask that this court reverse the district court, find that there was de minimis injuries, there was no excessive force, and that Deputy Wenger was entitled to qualified immunity. Thank you very much. Thank you. We'll go to the third and last.